**John SPELLMAN, Plaintiff,**

v.

**Joe HOPPER, et al., Defendants.**

**No. CIV.A. 95–D–1585–N.**

United States District Court,
M.D. Alabama,
Northern Division.

April 20, 2000.

Rhonda Brownstein, Montgomery, AL, for Plaintiff.

Andrew W. Redd, Montgomery, AL, Alice Ann Byrne, Montgomery, AL, for Defendants.

## ORDER

DE MENT, District Judge.

This cause is now presented to the court on the Recommendation of the Magistrate Judge, filed March 20, 2000 and Plaintiff's objections, filed April 13, 2000.

The court has carefully read the recommendation and objections and is of the opinion that said recommendation is well taken and is due to be adopted, approved and affirmed. It is, therefore,

CONSIDERED and ORDERED as follows:

1. That Plaintiff's objections be and the same are hereby OVERRULED;

2. That the Recommendation of the Magistrate Judge be and the same is hereby ADOPTED, APPROVED and AFFIRMED;

3. That Plaintiff's Motion For Ruling On Injunctive Relief, filed December 8, 1999, be and the same is hereby DENIED AS MOOT;

4. That a DECLARATORY JUDGMENT for Plaintiff shall be entered separately; and

5. That the Parties are hereby DIRECTED to meet and confer to attempt to resolve attorney's fee issues in this case without further litigation on or before May 3, 2000. Counsel for Plaintiff shall file a pleading titled "Notice Concerning Conference On Attorney's Fee Issues," no later than May 5, 2000, which shall indicate whether a resolution was reached.

## RECOMMENDATION OF THE MAGISTRATE JUDGE

WALKER, United States Magistrate Judge.

This case is essentially over. The Department of Corrections amended Administrative Regulation 433 on January 10, 2000 to provide that inmates in administrative segregation may receive four newspapers or four magazines or a combination of newspapers and magazines equal

to four. Plaintiff is satisfied with this result, and—but for a single offending phrase in the amended regulation, which plaintiff contends should be struck—desires only declaratory, not injunctive relief.[1]

The fly in the ointment is the following italicized phrase:

> Inmates who are placed in administrative segregation *who have been authorized while housed in general population to subscribe [to] and receive personal newspapers and/or magazines* will be allowed to receive only four (4) newspapers or four (4) magazines or a combination of newspapers and magazines equal to four. The inmate will have the opportunity and responsibility within the first thirty (30) days of their stay in administrative segregation, to cancel any such subscriptions that exceed the allowed four (4). Any newspapers or magazines received after this 30 day period that exceed the allowed 4

combination will be disposed of by the administration as contraband.

■ This phrase certainly reads like a restriction. It explicitly limits the administrative segregation inmates who may receive four magazines and/or newspapers to those authorized to do so in the general population. However, as both sides agree, *all* inmates in the general population are in fact authorized to receive such publications. What, then, is the function or significance of this phrase? To be frank, it has none.[2] Both sides in this lawsuit agree that the regulation is intended to give *all* administrative segregation inmates the right to receive four publications.

At this juncture, one may reasonably wonder why this phrase is disputed. Can the DOC not agree to strike the phrase out of the amended regulation in order to conclude this case? The DOC's answer is "no." A prison official at some point wrote this phrase, whatever its intended meaning. In defendants' view, that ought to be good enough for the court and the plaintiff,

---

1. A question arose in the hearing on March 6, 2000, as to whether the request for injunctive and declaratory relief is in fact moot because: (1) defendants amended the regulation, and (2) plaintiff is no longer in administrative segregation. However, this case is not moot. The voluntary cessation of allegedly illegal conduct does not moot a case. *United States v. W.T. Grant*, 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *National Advertising Co. v. City of Fort Lauderdale*, 934 F.2d 283, 285 (11th Cir.1991). The DOC possesses the power and authority to return Regulation 433 to its original form, and the court cannot conclude that the likelihood of further violations is sufficiently remote to recommend dismissal of plaintiff's claim. Further, although plaintiff is not now in administrative segregation, he has been so classified, on and off, throughout most of this lawsuit—and, indeed, throughout most of his sentence to life imprisonment. It is reasonable to expect that plaintiff may return to this status, and no party has suggested to the contrary. The duration of plaintiff's confinement in administrative seg-

regation was not sufficient for this litigation to be concluded, and may not be sufficient for another similar lawsuit, should he be returned to administrative segregation. Accordingly, plaintiff's claim is in the nature of one capable of repetition, yet evading review, and, thus, it represents an exception to the mootness doctrine. *National Broadcasting Co. v. Communications Workers of America, AFL–CIO*, 860 F.2d 1022, 1023–24 (11th Cir. 1988).

2. Defendants argued at a hearing on March 6, 2000, that this phrase tells inmates processing into administrative segregation that, if they had been subscribing to more than four magazines in the general population, they must cancel their extra subscriptions. However, that is not what the plain language of the phrase says. It does nothing more than identify the inmates who may receive four publications in administrative segregation—that is, those authorized to subscribe in the general population (in other words, every inmate).

who should defer to the officials most knowledgeable about running the prison under *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Can the plaintiff not then ignore the phrase, since it is not currently being enforced to restrict the right to publications? The plaintiff's answer is "no." Plaintiff argues that the phrase has been, and may be in the future, misinterpreted and used to do mischief by those applying the amended regulation. For example, prison officials may prohibit inmates currently in administrative segregation, or those coming into administrative segregation, from receiving publications if they did not subscribe to such publications while in the general population, even though they were eligible to do so.[3]

■ So the court is left to resolve this matter. In so doing, the court is aware that it must take care not to become "enmeshed in the minutiae of prison operations." *Bell v. Wolfish,* 441 U.S. 520, 562, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). On the other hand, it must also afford plaintiff complete relief. The court concludes that injunctive relief is not necessary at this time, given the amendment already made by the DOC to Administrative Regulation 433. "At the conclusion of a successful federal challenge to a state statute or local ordinance [or regulation], a district court can generally protect the interests of a federal plaintiff by entering a declaratory judgment, and therefore the· stronger injunctive medicine will be unnecessary." *Doran v. Salem Inn,* 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (material in brackets added).

In this case, the undersigned recommends that the court enter a separate declaratory judgment in this action declaring the rights of the parties as follows:

"The court DECLARES that the Department of Corrections' absolute prohibition on prisoner's receipt of subscription magazines and newspapers in administrative segregation in the Alabama prison system, formerly implemented through Administrative Regulation 433, violates the First Amendment to the United States Constitution and shall not be implemented further."

■ The undersigned does not recommend at this time that the court declare that the phrase still at issue violates the Constitution. The reason for this is not— in this particular instance—deference to prison officials. There is no apparent policy decision to defer to in this case; instead, the phrase seems to have carried over automatically from an older version of the regulation, and does not appear to represent a conscious choice made in response to plaintiff's challenge or for any other particular reason.[4] Instead, the court simply determines that, based on the DOC's own interpretation of its regulation and the proposed declaratory relief, there is no immediate threat that the plaintiff's right not to be denied all subscription publications in administrative segregation will be abridged. With no current or threatened enforcement of a restriction or condi-

---

**3.** This occurred to at least one inmate, Ira Morris, at Donaldson Correctional Facility. Plaintiff's counsel reports that other inmates at Donaldson had similar problems, and is prepared to present testimony to this effect. The DOC says that it has corrected this problem at Donaldson and does not concede that inmates other than Morris have had such problems.

**4.** At the hearing, defendant's counsel conceded that they had not actually discussed this phrase with their clients to find out exactly who wrote this phrase or why it remained in the regulation.

tion on this right, this matter has not ripened into an actual controversy suitable for declaratory judgment.[5]

Accordingly, for the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that the court deny the motion for ruling on injunctive relief filed on December 8, 1999 as moot and enter a declaratory judgment as set out above. It is further RECOMMENDED that the court direct the parties to meet and confer to attempt to resolve attorney's fee issues in this case without further litigation on or before April 20, 2000.

## ORDER

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve by mail a copy thereof on the parties to this action. The parties are DIRECTED to file any objections to the said Recommendation within a period of 13 days from the date of mailing to them. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir.1982). *See Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982). *See also Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981,

*en banc* ), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

March 20, 2000.

---

5. Absent a current problem, the DOC is entitled to determine for itself how to avoid future problems—whether by removing the disputed language, training its officials concerning enforcement, for by some other means.