**12**

BOSTON TEACHERS UNION, LOCAL 66, AFT, AFL–CIO, Plaintiff, Appellant,

v.

Paul T. EDGAR, et al., Defendants, Appellees.

BOSTON TEACHERS UNION, LOCAL 66, AFT, AFL–CIO, Plaintiffs, Appellees,

v.

Paul T. EDGAR, et al., Defendants, Appellees.

Appeal of SCHOOL COMMITTEE OF the CITY OF BOSTON, Defendant, Appellant.

Nos. 85–1589, 85–1632.

United States Court of Appeals, First Circuit.

Argued Dec. 5, 1985.

Decided March 27, 1986.

**14**

James T. Grady with whom Kevin Hern, Jr. and Grady, Dumont & Dwyer, Boston, Mass., were on brief, for Boston Teachers Union.

Marien Evans, Boston, Mass., for Boston School Committee.

William L. Pardee, Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for Com'rs of Mass. Labor Relations Com'n.

Before CAMPBELL, Chief Judge, BOWNES and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

The Boston Teachers Union, Local 66, AFT, AFL–CIO (the "Union"), brought an action against the Boston School Committee and the Commissioners of the Massachusetts Labor Relations Commission seeking a declaration that the provisions of Mass.Gen.Laws ch. 150E, § 9A (1984), which prohibits public employees and their unions from inducing, encouraging, or con-

doning a strike, violate the first amendment. Finding there was no longer a "live" controversy between the parties, the United States District Court for the District of Massachusetts dismissed the Union's complaint as moot. The Union and the School Committee appeal from the district court's order.

## I.

Plaintiff-appellant Union represents some 5,000 teachers and aides employed in the City of Boston's public school system by the Boston School Committee. As the certified bargaining representative for public employees, the Union's collective bargaining relationship is governed by the Massachusetts Public Employee Labor Relations Law, Mass.Gen.Laws ch. 150E, § 1 *et seq.* (the "Act") (1984). Defendant-appellee the Massachusetts Labor Relations Commission (the "Commission") is the state agency charged with administering and enforcing the Act.

The statute under challenge is section 9A of the Act which consists of two parts. Paragraph (a) prohibits public employees and their organizations from engaging in a strike, and provides further that,

> no public employee or employee organization shall induce, encourage or condone any strike, work stoppage, slowdown or withholding of services by such public employees.

In paragraph (b), the Commission is directed to prevent or correct violations of paragraph (a) as follows:

> Whenever a strike occurs or is about to occur, the employer shall petition the commission to make an investigation. If, after investigation, the commission determines that any provision of paragraph (a) of this section has been or is about to be violated, it shall immediately set requirements that must be complied with, including, but not limited to, instituting appropriate proceedings in the superior court for the county wherein such violation has occurred or is about to occur for enforcement of such requirements.

The events leading to the bringing of this action began in the fall of 1983. During negotiations between the Union and the School Committee for a new contract, Union officials stated publicly that they would recommend that the Union membership vote on December 14, 1983, to conduct a one-day strike on December 15 unless there was "significant progress" in the negotiations. These statements caused the School Committee to petition the Commission on December 13, 1983, for a "strike investigation" pursuant to section 9A(b), asserting that a strike, prohibited under section 9A(a), was "about to occur." [1]

The Commission convened an "investigation" on the morning of December 14, but adjourned until 7:00 p.m., when the results of the Union's membership meeting would be known. When the membership voted not to strike, the 7:00 p.m. investigation meeting was cancelled. On the basis of its vote not to strike, the Union moved to dismiss the petition filed by the School Committee, presenting the same constitutional objections to the statute raised here. The Commission, however, retained jurisdiction over the strike investigation, at the request of the School Committee, since contract negotiations were continuing.

On December 23, 1983, the Union brought this action seeking, *inter alia*, a declaration that Mass.Gen.Laws ch. 150E, § 9A, both on its face and as applied, is unconstitutional.[2] The Union alleged that section 9A(a), insofar as it prohibits public employees from inducing, encouraging or condoning a strike, is vague and overbroad in violation of the first amendment. The Union further asserted that section 9A(b) amounts to an unlawful prior restraint of speech and assembly, because the Commission's power to impose "requirements"

when it determines a strike "is about to occur" inhibits the Union and its members from considering, discussing or voting upon the question whether to strike. The Union did not, however, contest the constitutionality of the prohibition against striking itself.

On January 12, 1984, one day after service of the Union's complaint, the Commission formally dismissed the School Committee's petition for a strike investigation. Sometime between December 15, 1983, and July 9, 1984, the Union ratified a new collective bargaining agreement with the School Committee which will be in effect until August 31, 1986.

The Commissioners moved on June 15, 1984, for dismissal of the Union's suit on grounds of mootness or, alternatively, for summary judgment. After various other events not material here, the district court issued an order on July 9, 1985, denying the cross-motions for summary judgment by the Union and the School Committee, and dismissing the case as to all parties on grounds of mootness. The cross-appeals by the Union and the School Committee have been consolidated.

## II.

■ The only issue is whether there is now an actual "case or controversy" within the meaning of Article III of the Constitution, or whether, as the district court held, the case is moot and thus no longer justiciable. *See Sosna v. Iowa*, 419 U.S. 393, 397–403, 95 S.Ct. 553, 556–59, 42 L.Ed.2d 532 (1975). Where declaratory relief is sought, plaintiff must show that there is a substantial controversy over present rights of "sufficient immediacy and reality" re-

---

1. The School Committee had also petitioned the Commission on October 27, 1983, for a strike investigation, seeking an order restraining the Union and its officers from encouraging, inducing, or condoning a strike in violation of Mass. Gen.Laws ch. 150E, § 9A(a). On November 15, 1983, the Commission dismissed the petition because it found the prospect of a strike only speculative at that point, and because the Committee's petition was procedurally defective.

*See In re Boston School Committee and Boston Teachers Union*, No. SI–156 (Nov. 15, 1983).

2. After commencing the action, the Union waived its claims for injunctive relief and damages, and waived its claims that the statute violated the fifth and thirteenth amendments. The counterclaim brought by the School Committee against the Union was subsequently dismissed by stipulation of the parties.

quiring adjudication. *Preiser v. Newkirk,* 422 U.S. 395, 402, 95 S.Ct. 2330, 2334–35, 45 L.Ed.2d 272 (1975); *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 242, 57 S.Ct. 461, 464–65, 81 L.Ed. 617 (1937). "[W]hen the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," the case is moot. *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950–51, 23 L.Ed.2d 491 (1969)). We agree with the district court that this case is moot.

■ Assuming there was once a "live" controversy between the Union and the Commission,[3] it ended when the Commission dismissed the School Committee's petition for a strike investigation, removing any possibility that the Commission could issue a coercive order against the Union under the challenged state law. A new collective bargaining agreement was thereafter negotiated, and the labor dispute that had given rise to the strike threat and to the School Committee's petition ended. Thus, the district court, if it had reviewed the constitutionality of section 9A, would have been rendering a purely advisory opinion based on hypothetical facts, forbidden by Article III and the Federal Declaratory Judgments Act, 28 U.S.C. § 2201 (1982), rather than adjudicating *present rights* on established facts. *See Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979); *McCollester v. City of Keene,* 668 F.2d 617, 619–20 (1st Cir. 1982).

The Union argues that the case nonetheless fell into either of two established exceptions to the mootness doctrine. First, the Union contends that its claims should

not be considered moot since the Commission *voluntarily* ceased its allegedly illegal conduct, thereby eliminating the live dispute between the parties. *See United States v. W.T. Grant Co.,* 345 U.S. 629, 632–33, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953). The Union also argues that the case is not moot because the events involved are "capable of repetition yet evading review." *See, e.g., Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973) (*quoting Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911)). We find no merit in plaintiff's reliance on these two exceptions, for reasons we now discuss.

**A. Voluntary Cessation**

■ Under this exception, generally, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot."[4] *W.T. Grant,* 345 U.S. at 632, 73 S.Ct. at 897; *see also City of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). This exception is meant to prevent defendants from defeating a plaintiff's efforts to have its claims adjudicated simply by stopping their challenged actions, and then resuming their "old ways" once the case became moot. 345 U.S. at 632, 73 S.Ct. at 897; *see also Vitek v. Jones,* 445 U.S. 480, 503, 100 S.Ct. 1254, 1269, 63 L.Ed.2d 552 (1980) (Blackmun, J., dissenting). Here the Union contends that the Commission, by dismissing the petition for a strike investigation when it did, voluntarily ceased its allegedly illegal conduct, and in doing so deprived the Union of the opportunity to litigate its constitutional claims before they became moot.

---

**3.** Arguably the dispute never ripened into a justiciable controversy. We shall assume for present purposes, however, that it did.

**4.** Once a court properly acquires jurisdiction over a justiciable controversy, a subsequent voluntary cessation of the challenged conduct will render the case moot only where "(1) it can be said with assurance that 'there is no reasonable

expectation ...' that the alleged violation will recur, ... and, (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *City of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); *see also Free v. Landrieu,* 666 F.2d 698, 704 (1981).

■ We agree with the district court, however, that the Commission's dismissal of the petition on January 12, 1984, does not qualify as a "voluntary cessation." By voting not to strike, thus making it clear that a strike was not about to occur, the Union itself ensured that the Commission would be powerless to continue its allegedly unconstitutional conduct. The Commission is authorized by section 9A(b) to "set requirements" *only when a strike "occurs or is about to occur."* The Commission has determined on other occasions that a strike is deemed "about to occur" only when the Union membership actually votes to strike. *See In re Boston School Committee and Boston Teachers Union,* No. SI–156, slip op. at 3–4 (Nov. 15, 1983); *In re Boston School Committee and Boston Teachers Union,* No. SI–140, slip op. at 4–5 (Sept. 4, 1981).[5] A vote of the membership *not* to strike obviously precluded further Commission action.

■ The Union focuses on the fact that the Commission retained "jurisdiction" over the petition for almost a month after the Union voted against the strike. This, it says, shows that the dismissal of the petition, one day after it was served with notice of the present action, was voluntary. But as we have already pointed out, the Commission is empowered to act under section 9A(b) only so long as a strike is "about to occur." Once the Commission determined, after investigation, that paragraph (a) had not been, nor was about to be, violated, it had little choice but to dismiss the petition. That it did not formally dismiss the petition until later is of no consequence since the possibility that the Union would be subjected to an order under section 9A(b) had, for all practical purposes, ceased.

B. *Capable of Repetition Yet Evading Review*

■ We also reject the Union's contention that its claims under section 9A are saved from mootness because they are "capable of repetition, yet evading review." *See, e.g., Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 126–27, 94 S.Ct. 1694, 1700–01, 40 L.Ed.2d 1 (1974); *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973); *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). To qualify under this exception, the Union must show that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam) (*quoting Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348–49, 46 L.Ed.2d 350 (1975) (per curiam)); *Illsley v. United States Parole and Probation Department,* 636 F.2d 1, 2 (1st Cir.1980) (per curiam), *cert. denied,* 450 U.S. 1032, 101 S.Ct. 1744, 68 L.Ed.2d 228 (1981).

■ The Union argues that, although the underlying dispute here is "clearly capable of repetition," it has been unable to obtain judicial review of the statute before the controversy became moot. It points out that this is at least the third time that Union officials threatened a strike vote during contract negotiations, that the School Committee petitioned for a strike investigation, and that the Commission prepared to enforce section 9A in response.[6] When the parties negotiate again this year for a new contract, it is possible that the same scenario may repeat itself. Nonetheless, the fact that plaintiff's claims have yet to be adjudicated does not demonstrate

---

5. The Commission has also ruled that a vote by Union officials to recommend a strike is not sufficient for it to find that an illegal job action is either occurring or is about to occur. At such a time the "imminence of a work stoppage [is] merely speculative." No. SI–140, slip op. at 5 (Sept. 4, 1981).

6. See the following "strike investigation" rulings by the Commission involving the Boston Teachers Union: No. SI–66 (September 13, 1978); No. SI–140 (September 4, 1981).

that they are, by their nature, incapable of review.

■ To the contrary, if and when the Union actually votes to strike and the Commission "sets requirements" in response, that is, requires the Union to take affirmative steps to avert a strike, the Union need only refuse to comply to secure an opportunity to challenge in court the constitutionality of section 9A. To enforce its order, the Commission must make application to the Massachusetts Superior Court. *See* Mass. Gen.Laws ch. 150E, § 9A(b); *Director, Division of Employee Relations v. Labor Relations Commission*, 370 Mass. 162, 167–68, 346 N.E.2d 852 (1976). In that court, the Union may defend its noncompliance with the Commission's requirements on any available ground, including that section 9A is unconstitutional. Should the superior court reject the Union's constitutional arguments and issue a preliminary injunction, the Union can ask for a stay, and seek immediate appellate review of the injunction by petition or by appeal. *See* Mass.Gen.Laws ch. 231, § 118 (1984); *Packaging Industries Group, Inc. v. Cheney*, 380 Mass. 609, 610–12, 405 N.E.2d 106 (1980).

We have held that it is not unreasonable to ask a litigant who is "aggrieved by a summons or subpoena" to avoid mootness by refusing to comply absent "compelling circumstances" militating against such a course, such as the existence of criminal penalties. *United States v. Arthur Andersen & Company*, 623 F.2d 720, 724–25 (1st Cir.), *cert. denied*, 449 U.S. 1021, 101 S.Ct. 588, 66 L.Ed.2d 483 (1980). The present Act is not enforced through criminal sanctions, however. *See* Mass.Gen. Laws ch. 150E, § 15 (1984). Rather the Commission must seek an enforcement order from the superior court, in a proceed-

ing to which the Union is a party. Thus the Union has full access to a judicial forum before a judicial enforcement order can be issued and before the Union need face the possibility of even a civil contempt proceeding.[7] In these circumstances, it is reasonable to require a party to refuse to comply with the Commission's requirements as a prerequisite to litigation.

■ The Union contends, however, that where a plaintiff seeks judicial review of a prior restraint on arguably protected speech, the Supreme Court has expressed an unwillingness, out of concern that first amendment rights may be "chilled," to require litigants to subject themselves to contempt or criminal sanctions in order to avoid mootness. *See First National Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978); *Nebraska Press Association v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *see also Arthur Andersen*, 623 F.2d at 724. As the Union puts it, the "specter" of the Commission, poised to act whenever a strike is "about to occur," inhibits its members from freely "considering, discussing or voting upon" a strike. But the only "sanction" available to the Commission is to issue an order against the Union which cannot be enforced except by a later court order issued after a judicial hearing. *Compare Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (threat of criminal prosecution); *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215–16, 39 L.Ed.2d 505 (1974) (same); *Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 745–46, 35 L.Ed.2d 201 (1973) (same). Violation of the Commission's order is not by itself a contempt or a criminal act. Indeed, given the Commission's policy not to issue an order against the Union until its membership *votes* to

---

7. It is possible, of course, that the Union may end up obtaining review by refusing to comply with the court order and incurring a contempt citation. *See Labor Relations Commission v. Fall River Educators' Association*, 382 Mass. 465, 467–68, 416 N.E.2d 1340 (1981); *Labor Relations Commission v. Boston Teachers Union, Lo-*

*cal 66*, 374 Mass. 79, 82–84, 371 N.E.2d 761 (1977). But in those cases, which involved the review of contempt sanctions, the unions apparently did not attempt to test the constitutionality of the statute before an injunction was issued, and did not attempt to appeal the injunctions thereafter.

strike, we see little likelihood that the mere discussion of striking by the membership will provoke Commission action. Past events show that Union members have not, in fact, been deterred from considering, discussing, or even voting upon a strike.

■ Postponing the resolution of this moot case until there is a live, defined controversy is also desirable because the Commission's refusal to act until a strike is imminent has prevented it from yet disclosing how it will interpret and enforce section 9A(a)'s prohibition against inducing, encouraging, or condoning a strike. The Commission's interpretation may alleviate some of the Union's concerns. *See Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 300, 308, 99 S.Ct. 2301, 2314, 60 L.Ed.2d 895 (1979); *International Longshoremen's & Warehousemen's Union, Local 37 v. Boyd,* 347 U.S. 222, 223–24, 74 S.Ct. 447, 448–49, 98 L.Ed. 650 (1954); *Adler v. Board of Education,* 342 U.S. 485, 497–98, 72 S.Ct. 380, 387–88, 96 L.Ed. 517 (1952) (Frankfurter, J., dissenting). Moreover, it seems appropriate for the Massachusetts courts to have a chance to address the constitutional claims, since the "statute is reasonably susceptible of constructions that might undercut or modify appellees' vagueness attack." *Babbitt,* 442 U.S. at 307, 99 S.Ct. at 2313. Section 9A(a) may, for example, be fairly construed as proscribing only overt actions or conduct advocating a strike, rather than prohibiting the assertion of the right to strike,[8] or the mere discussion of whether to strike.

Since we find that there is no longer a live controversy between the parties and that the exceptions to the mootness doctrine do not apply, we hold that the district court properly dismissed the Union's complaint as moot.

*Affirmed.*

**8.** The Supreme Court has held that it is unconstitutional to prohibit workers from expressing a belief in their right to strike. *See Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); *see also United States v.*

*Taylor,* 693 F.2d 919 (9th Cir.1982); *Aurora Education Association East v. Board of Education,* 490 F.2d 431, 434 (7th Cir.1973), *cert. denied,* 416 U.S. 985, 94 S.Ct. 2388, 40 L.Ed.2d 762 (1974).