**PORTUGUESE PARENTS ADVISORY COUNCIL, et al., Plaintiffs,**

v.

**Joseph L. MULREADY, et al., Defendants.**

**Civ. A. No. 80–1530–PBS.**

United States District Court, D. Massachusetts.

April 13, 1994.

Alan Jay Rom, Lawyer's Committee for Civil Rights Under Law of the Boston Bar Ass'n, Boston, MA, for plaintiffs.

---

**13.** *See FDIC v. Rivera–Arroyo,* 907 F.2d 1233, 1236 (1st Cir.1990).

Judith Fabricant, Asst. Atty. Gen., Boston, MA, for defendants.

## MEMORANDUM OF DECISION AND ORDER

SARIS, District Judge.

■ Plaintiffs Maria Salomao ("Salomao") and the Portuguese Parents Advisory Council of the Hudson Public Schools [1] ("PPAC") seek a declaratory judgment pursuant to 28 U.S.C. § 2201 (West 1990) that the defendant officials of the Massachusetts Department of Education and Board of Education (collectively "MDE") are obliged under Title VI of the Civil Rights Act of 1964 to investigate claims of discrimination or retaliation by the Commonwealth's local school districts.

Defendants renew a motion to dismiss the Amended Complaint, which joined them as parties in 1982, on the grounds that Salomao was rehired by Hudson in 1980, that her individual claims against the Hudson Public Schools were settled in 1989, and therefore, that the controversy with the MDE is now moot. On January 21, 1994, the case was transferred to the undersigned judge, and at a status conference, the parties agreed to submit the question of mootness on an agreed statement of facts, which they had filed in 1990. After a review of the record, the court *ALLOWS* the motion to dismiss.

## BACKGROUND

The agreed statement of facts and the record before the court establish the following undisputed facts. In June of 1979 the PPAC filed an administrative complaint against Hudson with the United States Department of Health, Education and Welfare ("HEW"), Office for Civil Rights ("OCR"), alleging that Hudson's bilingual program failed to provide adequate instruction to students with limited proficiency in English. The very next month the school system decided not to rehire Salomao. Plaintiffs responded by bringing two identical, additional administrative complaints—one with the OCR and one with the MDE—both charging that the school system retaliated for the initial complaint by failing to renew Salomao's

contract. On January 7, 1980, MDE informed the plaintiffs by letter that the OCR was the proper body to investigate the Title VI charges. On July 7, 1980, OCR concluded that, with respect to the first complaint, Hudson had violated Title VI by providing inadequate language instruction to students with limited English speaking abilities.

Plaintiffs then brought this complaint alleging civil rights violations under 42 U.S.C. § 1983 and other statutes against Hudson Public School officials ("Hudson") on July 11, 1980. Several days later Hudson rehired Mrs. Salomao. In December of 1980, OCR completed its investigation and found that the town had retaliated against Salomao for her role in bringing the initial administrative complaint but had corrected that transgression by rehiring her.

PPAC then filed a third administrative complaint with the OCR seeking it to order the MDE to investigate plaintiffs' allegations of discrimination and retaliation. Concluding that OCR is itself required to investigate the type of allegations asserted by plaintiffs, OCR closed PPAC's case on March 31, 1981. PPAC appealed that ruling to the Deputy Assistant Secretary of HEW. The secretary, in turn, upheld the regional director's decision that the MDE is not required to investigate allegations of Title VI violations. In September 1982, two years after Salomao was rehired, this action was amended to add officials of the MDE as defendants.

Between 1984 and 1989, this litigation moved at a lethargic pace. In 1984 the state defendants moved to dismiss the complaint on grounds of mootness and failure to state a claim. Plaintiffs countered with a motion for summary judgment. On October 27, 1988, this court denied plaintiffs' motion for summary judgment. *See PPAC v. Mulready,* 848 F.Supp. 1078, 1080 (D.Mass.1988). The court also denied defendant MDE's motion to dismiss, stating that:

[P]laintiffs have sustained injuries as a result of MDE's inaction. While MDE refused to investigate [Hudson's] actions, the school system continued to harass plain-

---

1. The Chairman is Claudinor Salomao, who is the husband of Mrs. Salomao.

tiffs by having the state's attorney take action against the PPAC, and by filing criminal charges against the Salomaos. Furthermore, MDE maintains that it has no duty to investigate alleged violations of Title VI, which means that the harm suffered by plaintiffs may be repeated. Therefore, the instant case presents a controversy where a governmental policy has adversely affected the interests of the parties, and in which the threat of injury persists. Thus, the plaintiffs have presented a case or controversy before this court. *Id.* at 6[, 848 F.Supp. at 1080].

The record is unclear as to when the alleged harassment by the Hudson school system occurred. However, the court's 1988 decision was based on the parties' 1984 submission.

Almost one year later, pursuant to an agreement and a consented to judgment filed with the court on July 21, 1989, plaintiffs settled all claims against the Hudson defendants and dropped the other individual defendants from the case. Recognizing that the claim pressed here was the sole surviving issue, the court ordered the parties to submit briefs on October 3, 1990, concerning the basis of the court's jurisdiction to decide the MDE's duties under Title VI. The court has not ruled on this case since it denied the parties' dispositive motions in 1988. The parties filed an agreed upon statement of facts, and the MDE again asserted that the case was moot.

Nothing in the record indicates that plaintiff Salomao is again in jeopardy of losing her job or is being harassed or retaliated against in any way. The record is devoid of any evidence evincing any ongoing disputes or even potential future disputes between PPAC and Hudson or the MDE.

## DISCUSSION

■ The only issue is whether there is now an actual "case or controversy" within the meaning of Article III of the Constitution, or whether the case is moot. Where declaratory relief is sought pursuant to 28 U.S.C. § 2201, a plaintiff must show that there is a substantial controversy over present rights of "sufficient immediacy and reali-

ty" requiring adjudication. *Boston Teachers Union, Local 66 v. Edgar,* 787 F.2d 12, 15 (1st Cir.1986) (quoting *Preiser v. Newkirk,* 422 U.S. 395, 402, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975)). A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969)). The burden of demonstrating mootness is a heavy one. *Id.*

■ A case is not moot where "the challenged governmental activity ... is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Super Tire Eng'g Co. v. McCorkle,* 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974) (even though strike was over, the action seeking declaratory relief concerning striking workers' eligibility for public assistance was not moot because the state's policy was fixed and definite and was immediately and directly injurious to the plaintiff's economic position). In a case involving government action, plaintiffs must allege "a colorable claim of injury from an extant and fixed policy" of the state. *Id.* at 124, 94 S.Ct. at 1699. Where state action or its imminence adversely affects the status of private parties, declaratory relief is available. *Id.* at 125, 94 S.Ct. at 1699. Similarly, the court may resolve an issue which is "capable of repetition, yet evading review" where the litigants show "the existence of an immediate and definite governmental action or policy that has adversely affected and continues to affect a present interest." *Id.* at 125–26, 94 S.Ct. at 1699–1700; *see Allende v. Schultz,* 845 F.2d 1111, 1115 n. 7 (1st Cir.1988) (even though INS policy of excluding aliens upon the mere allegation that alien would prejudice public interest was mooted by the award of a visa to plaintiff, the validity of the policy remained a live issue because the plaintiff and others expected to seek reentry in the near future for other speaking engagements); *cf. Pustell v. Lynn Pub. Schs.,* 18 F.3d 50, 52–53 (1st Cir.1994) (where the plaintiffs con-

tinued to suffer the harm of substantial uncertainty the action for declaratory judgment was ripe regardless of the imminence of an enforcement action).

Here, plaintiffs have submitted no evidence to support their claim that this is a live controversy. Mrs. Salomao has settled all her individual claims with Hudson and, for at least the last ten years, no further claims of harassment or retaliation have occurred. The PPAC has presented no evidence of recurring problems faced by any other members. Although plaintiffs argue that they still disagree with the legal position taken by the MDE, which appears to be ongoing,[2] they must demonstrate more than a legal disagreement—they must show that the governmental inactivity "by its continued and brooding presence" has a substantial adverse impact on their interests. *McCorkle,* 416 U.S. at 122, 94 S.Ct. at 1698; *cf. International Union, United Auto. Workers of Am. v. Dana Corp.,* 697 F.2d 718, 723 (6th Cir.1983) (where parties settled case but preserved legal disagreement as to meaning of neutrality commitment for judicial resolution, court held case moot).

The possibility that plaintiffs might experience future problems is "too remote to assure that the parties have a substantial enough stake in the outcome of this case to justify resolution of the issues involved." *Sanchez–Mariani v. Ellingwood,* 691 F.2d 592, 595 (1st Cir.1982) (request for declaratory relief that agency deprived plaintiff of a hearing is not a question capable of repetition yet evading review where plaintiff sued in her own capacity and not as a class representative and the "likelihood of repetition as to her is minute"). If plaintiffs had ever successfully certified a class, the mootness ruling may well have been different under the test enunciated in *County of Los Angeles v. Davis,* 440 U.S. at 631, 99 S.Ct. at 1383.

Even if plaintiff's remaining claims were not constitutionally moot, this court would use its discretionary power to withhold declaratory relief for prudential reasons. *S–1 & S–2 v. C.D. Spangler, Jr.,* 832 F.2d 294, 297 (4th Cir.1987) (action by parents of handicapped children seeking a declaration that state board of education must allow hearing officers to award tuition reimbursement for violations of the federal Education of the Handicapped Act was prudentially moot when the parents settled the underlying dispute for money with the city board); *see also* 13A C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure 2d* § 3533.1, at 223 (1984 & Supp.1993). Again, Salomao was reinstated long ago and settled her claims for back pay against the Hudson defendants; there is no hint in the record of present or future harassment or retaliatory action. Federal intervention through the OCR has resolved to plaintiffs' satisfaction the complaints about inadequate bilingual education. Intervening events have vitiated the plaintiffs' "present need for remedial relief from the federal courts," *Spangler,* 832 F.2d at 297, particularly when this case was not litigated as a class action, *see id.* at 298. Concern for the rights of other potential plaintiffs in other school districts is not sufficient to justify the relief sought here.

In its order of October, 1990, the court asked the parties to brief the following question: "By what authority does the federal court, as opposed to the state court, have jurisdiction to determine how the [MDE], a state agency receiving federal funds, should respond to complaints filed with it alleging discrimination by one of the local school districts." This case is a particularly inappropriate vehicle to resolve that question because, arguably, the OCR proceedings obviated any need for a state investigation, even if the state had an obligation to conduct its own investigation under Title VI. The resolution of this difficult constitutional question is better left to a time when the dispute is immediate and real.

### ORDER

The action is **DISMISSED** as moot.

---

2. At the status conference, MDE's counsel agreed that the state's legal position had not changed.