Dorota KIEDOS, Luisa Mejia, Xiomara
Cruz, Individually and on Behalf of all
Others Similarly Situated, Plaintiffs,

v.

Kenneth APFEL, Commissioner, Social
Security Administration,
Defendant.

No. Civ.A. 97–30149–MAP.

United States District Court,
D. Massachusetts.

March 23, 1999.

Ray Cebula, Disability Law Center, Boston, MA, Ethel Zelenske, National Senior Citizens Law Center, Washington, DC, for plaintiffs.

Richard G. Lepley, Pamela J. Aronson, Dept. of Justice, Federal Programs Branch, Washington, DC, for defendant.

## ORDER

PONSOR, District Judge.

Upon *de novo* review this Report and Recommendation is hereby adopted, without objection. The motions to dismiss are allowed.

*REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS (Docket No. 20) and DEFENDANT'S RENEWED MOTION TO DISMISS FIRST AMENDED COMPLAINT (Docket No. 26)*

NEIMAN, United States Magistrate Judge.

Defendant Kenneth Apfel, Commissioner of the Social Security Administration ("Defendant"), claims that Plaintiffs' complaints are moot due to intervening legislation and the voluntary cessation of the challenged policy. In response, Plaintiffs Dorothy Kiedos, Luisa Mejia and Xiomara Cruz, all of whom had been denied Supplemental Security Income (SSI) due to their alien immigrant status, assert that Defendant's changed policy has not completely eradicated the deleterious effects of the challenged policy.

Defendant's original motion to dismiss, as well as his renewed motion, have been referred to the court for a report and recommendation pursuant to Rule 3 of the Rules for United States Magistrates for the United States District Court for the District of Massachusetts. *See* 28 U.S.C. § 636(b)(1)(A). For the reasons which follow, the court recommends that Defendant's motions to dismiss be allowed.

## I. *STANDARD OF REVIEW*

When confronted with a motion to dismiss pursuant to Rule 12(b)(6), a court is required to view the facts as presented in the pleadings, and all reasonable inferences to be drawn therefrom, in a light most favorable to the non-moving party. *See Acadia Motors, Inc. v. Ford Motor Co.,* 44 F.3d 1050, 1055 (1st Cir.1995). A dismissal for failure to state a claim is appropriate only if it appears, according to the facts alleged, that the claimant cannot recover on any viable theory. *Rumford Pharmacy, Inc. v. City of East Providence,* 970 F.2d 996, 998 (1st Cir.1992). "[T]he issue is not whether plaintiffs will

ultimately prevail, but whether they are entitled to offer evidence to support their claims." *Day v. Fallon Comm. Health Plan, Inc.*, 917 F.Supp. 72, 75 (D.Mass. 1996). *See also Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir.1994). However, a court "need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir. 1990).

## II. *FACTUAL AND LEGAL BACKGROUND*

Plaintiffs filed this action to challenge Defendant's implementation of the Personal Responsibility and Work Opportunity Act of 1996, Pub.L. No. 104–193, ("1996 Welfare Act"), enacted August 22, 1996. The 1996 Welfare Act significantly limited SSI eligibility for certain noncitizen residents of the United States. In particular, Plaintiffs challenged Defendant's policy of applying the 1996 Welfare Act to SSI applications pending on its effective date April 22, 1996. Thus, SSI claimants, who would have been eligible under pre-existing alien status rules, would nonetheless be found ineligible.

On August 5, 1997, the Balanced Budget Act of 1997, Pub.L. No. 105–33 ("BBA"), was signed by the President, the provisions of which significantly altered SSI eligibility criteria for noncitizens. In effect, the BBA eliminated the challenged barriers to Plaintiffs' eligibility for SSI. The BBA changes were effective as if they had been included in the 1996 Welfare Act. On October 20, 1997, Defendant issued instructions to be included in the Social Security Administration's Program Operations Manual System ("POMS") in order to implement the BBA.

On October 24, 1997, Plaintiffs filed their First Amended Complaint adding claims challenging Defendant's failure to implement those provisions of the BBA relevant to their SSI claims. Specifically, Plaintiffs alleged that Defendant had failed to implement the BBA provisions which repealed and changed the 1996 Welfare Act eligibility criteria used to deny their claims. This failure, Plaintiffs alleged, was a violation of Defendant's obligation to carry out the plain language of the BBA and the express purposes of the SSI program.

The POMS instructions were followed by the Declaration of Caroline Lott, dated December 3, 1997. (Def.Mem.Supp.Mot. Dismiss (Docket No. 20) Exh. 1.) This Declaration, which was appended to Defendant's original motion to dismiss, required that SSI applications filed before August 22, 1996, be readjudicated. The Declaration also provided information as to how individuals would be contacted and their applications reprocessed. Specifically, lists of affected claimants, prototype notice language and processing instructions would be sent to local offices of the Social Security Administration ("SSA"). (Lott Decl. ¶ 6.) Local SSA offices then would issue notices to the individual claimants informing them of the decision to allow them to have their applications readjudicated. The Declaration also described SSA's goal of issuing formal instructions by November 30, 1997, and stated that "SSA will engage in a vigorous public information campaign to ensure that the public is aware of this" change in policy. (Id.¶ 8.)

In fact, the formal instructions were not issued until December 18, 1997, when Defendant disseminated Emergency Teletype EM–97–207 ("Teletype"). The Teletype provided an explanation of the process Defendant would use to send lists of affected individuals, including the Plaintiff class, to local SSA offices. The Teletype also detailed the notification procedure to be used to locate and contact individuals in order to readjudicate their claims. Individuals who had pending appeals, however, would not receive these letters. (EM 97–207, § B.1.) Similarly, individuals who were in current pay status, but who had previous periods of ineligibility due to Defendant's renounced policy, would not receive letters

until the claim had been reviewed by the local SSA. (Def.Mem.Supp. Renewed Mot. Dismiss (Docket No. 27) Exh. 2, EM–97–207, § C.1.)

After these latter two groups of claimants were isolated, local SSA offices were to send a "come in" letter to each individual who had filed an application prior to August 22, 1996. The letter would inform the claimant of the change in policy and the readjudication procedure, (EM–97–207 § B.1), and would be accompanied by a foreign language insert that instructed the recipient to have the English language letter translated, if necessary. Individuals were allowed a thirty day period to respond. (EM–97–207 § C.2.)

After fifteen days from the date of the "come in" letter, local SSA offices were to send follow up letters to nonresponding individuals. The follow up letter was essentially a copy of the original letter. (EM–97–207 § C.3.) Claims of individuals who did not respond within the thirty day period were to be placed in "close out" status. The procedure however, required local SSA offices to take extraordinary steps before closing an individual's file, including "all possible efforts" to secure needed information. (Id. § C.4.)[1]

A Second Declaration of Caroline Lott, appended to Defendant's renewed motion to dismiss, indicated that Defendant had issued the lists of affected claimants to the local SSA offices and that the offices had begun the process of sending initial "come in" letters. (Def.Mem.Supp. Renewed Mot. Exhib. 1, Second Lott Decl. ¶ 7.)

## III. *DISCUSSION*

In his motions to dismiss, Defendant argues that Plaintiffs' case is moot because he has voluntarily ceased any challenged conduct. In particular, Defendant points to the BBA, the POMS, the Teletype and other policy statements which provide Plaintiffs with all relief to which they would be otherwise entitled if successful on the merits of their claims. In response, Plaintiffs assert that their claims are not moot and that Defendant's reliance on the voluntary cessation principle is misplaced.

 "[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). "The inability of the federal judiciary to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (internal quotations and citation omitted). As the Supreme Court has explained, "no justiciable controversy is presented ... when the parties are asking for an advisory opinion, [or] when the question sought to be adjudicated has been mooted by subsequent developments ..." *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

 A case is not moot, however, if the issues presented are "live" or if the parties retain a "legally cognizable interest in the outcome." *Knight v. Mills*, 836 F.2d 659, 670 (1st Cir.1987) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). Even the "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

---

1. In particular, the local SSA office was to:
 try to obtain information/evidence from other sources, ...; attempt to contact the individual by phone to determine if additional time is needed or to offer assistance is needed; review case file for names of relatives, friends, or medical treating sources who may be able to provide assistance; pursue any known sources of assistance including linkages with community organizations established through outreach activities—particularly important where a *language barrier* may interfere with the claimant's ability to cooperate. . . .

See *Nunez–Soto v. Alvarado*, 956 F.2d 1, 3 (1st Cir.1992); *Boston Teachers Union, Local 66 v. Edgar*, 787 F.2d 12, 16 (1st Cir.1986). "This rule is derived from the notion that a challenged practice or policy might always evade review by being voluntarily abated during the pendency of a legal challenge thus leaving the defendant 'free to return to his old ways.'" *Knight*, 836 F.2d at 670 (quoting *W.T. Grant*, 345 U.S. at 632–33, 73 S.Ct. 894). To conclude that a case has become moot merely because a defendant claims to have ceased the challenged policy would entitle a defendant to a dismissal as a matter of right. "The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement." *W.T. Grant*, 345 U.S. at 632, 73 S.Ct. 894. Hence, the burden on a defendant to demonstrate mootness "is a heavy one." *Id.* at 633, 73 S.Ct. 894.

■ There is, however, an exception to the general rule that the voluntary cessation of allegedly illegal conduct does not render a case moot, namely, if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (internal quotation marks and citations omitted). Plaintiffs' argument focuses entirely on the second prong of *Davis*.

■ As an initial matter, the court notes the parties do not disagree with the purpose and application of the BBA. Previously excluded aliens who had applied for SSI benefits prior to August 22, 1996, were to be made eligible for those benefits, assuming of course they met other relevant qualifications. Thus, were the BBA fully implemented, Plaintiffs' claims under the Welfare Reform Act would be moot, because they would be eligible to receive benefits back to the date of their original SSI applications.

In this regard, Defendant concedes that all but one of the individually named plaintiffs identified in the first Amended Complaint appear to be eligible for SSI benefits based on disability. (Def.Mem.Supp. Renewed Mot. at 8 n. 3.) In turn, Plaintiffs concede that the named Plaintiffs, at least, have received much, if not all, of the relief sought. (Pl.Opp. Renewed Mot. to Dismiss (Docket No. 28) at 7.)

Still, Plaintiffs maintain that, despite the stated change in policy, the case is not moot because Defendant has not completely redressed the original harm. Specifically, Plaintiffs assert that there is no assurance that Defendant will apply the POMS and Teletype "in a lawful manner." *Wilson v. Sullivan*, 709 F.Supp. 1351, 1356 (D.N.J.1989). This is particularly true, Plaintiffs argue, because Defendant's implementation policy is embodied in pronouncements which are "subregulatory" only.

Plaintiffs have a point. There is certainly a question as to whether either the POMS or the Teletype has sufficient legal force to bind Defendant. *Cf. Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (Social Security Administration Claims Manual "has no legal force, and it does not bind the SSA"); *Miller v. Henman*, 804 F.2d 421, 424 (7th Cir.1986) ("Whether we call the pronouncement 'internal personnel manuals' or 'precatory' or something else, they remain statements of the way in which discretion is exercised but do not establish substantive rights."); *Parker for Lamon v. Sullivan*, 891 F.2d 185, 190 (7th Cir.1989) ("The POMS manual has no legal force and therefore the standard cannot be controlling in this case."). Here, however, the applicable POMS manual provision and the Teletype were both written at Defendant's direction. More importantly, as both Lott Declarations make clear, Defendant intends to be bound by the policy. *Cf. Rose v. Shalala*, 34 F.3d 13, 17 n. 2. ("The Secretary has raised no objection to according the POMS policy [at issue] binding

effect on the Secretary's decisionmaking."). Defendant has no choice. The BBA mandates the very policy which Defendant is implementing. The court has no reason to expect that Defendant would, or could, change it.

Still, Plaintiffs have consistently maintained that Defendant has not demonstrated that the policy has in fact eradicated the harm. For example, Plaintiffs originally claimed that Defendant was unable to provide any specific information concerning notification of the plaintiff class or the number of claims readjudicated. Although the Teletype required that "come-in" letters be sent to all purported class members, Plaintiffs argued, Defendant provided no evidence that letters had been sent by all local SSA offices to those individuals. Moreover, Plaintiffs asserted that Defendant's reliance on the Second Lott Declaration—to establish that the letters had been sent—was misplaced. The Declaration merely reiterated the Teletype instructions and provided no specific information about class members residing in Massachusetts, Rhode Island, New Hampshire and Maine. (Pl.Opp. at 11.) At best, Plaintiffs asserted, the Declaration merely stated that local SSA offices "have begun the process...." (Second Lott Declaration ¶ 7.)

In addition, Plaintiffs claimed that Defendant provided no information regarding the response rate or efforts undertaken to locate nonresponders. Nor had Defendant provided any details about outreach efforts beyond the notices themselves. At bottom, Plaintiffs asserted, the POMS, the Declarations and the Teletype only indicated Defendant's interpretation of the law. They did not establish that he has applied it correctly.

Were this not a class action seeking injunctive relief, the named Plaintiffs' concerns at this point may well be considered hypothetical. Cf. Boston Teachers Union, 787 F.2d at 15–16 ("Where declaratory relief is sought, plaintiff must show that there is a substantial controversy over present rights of sufficient immediacy and reality requiring adjudication.") (internal quotation marks and citation omitted). As indicated, the named Plaintiffs themselves have been afforded the individual relief they sought. Still, the class nature of the matter places this litigation in a somewhat different posture.

■ Of course, if Plaintiffs' class had been certified, the fact that the claims of the named Plaintiffs may have since been rendered moot would not moot automatically the claims of the class. Gerstein v. Pugh, 420 U.S. 103, 110–11 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). See also Sosna v. Iowa, 419 U.S. 393, 399, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) ("[T]he class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by [the named plaintiff]."). That the class has not yet been certified, however, does not necessarily deprive the court of jurisdiction. As the Supreme Court recognized in Gerstein, "[s]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." United States Parole Comm'n v. Geraghty, 445 U.S. 388, 399, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (citing Gerstein, 420 U.S. at 110 n. 11, 95 S.Ct. 854). "[A]n action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied." Id. at 404, 95 S.Ct. 854. "In such cases, the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution." County of Riverside v. McLaughlin, 500 U.S. 44, 52, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). See also Green v. Johnson, 513 F.Supp. 965, 974 (D.Mass.1981) (mootness of named plaintiff is not an absolute bar to class certification); Roldan v. Minter, 409 F.Supp. 663, 666 n. 2 (D.Mass.1976) (problems presented by class action fell within capability-of-repetition exception to the mootness doc-

trine). *But see Portuguese Parents Advisory Council v. Mulready,* 848 F.Supp. 1078, 1081 (D.Mass.1994) ("if plaintiffs had ever successfully certified a class, the mootness ruling may well have been different under the test enunciated in *County of Los Angeles v. Davis* ").

Although Defendant claimed in response to Plaintiffs' motion for class certification that the underlying mootness of the case obviates any need to certify a class, he has not pretended to treat this matter as anything but a class action. The identity of the class has always been known, if not acknowledged, by Defendant. *See Navarro–Ayala v. Hernandez–Colon,* 951 F.2d 1325, 1334 (1st Cir.1991) (affirming trial court's implicit grant of claim relief). Indeed, Defendant's motions to dismiss are grounded in his contention that the needs of the class, which Defendant acknowledges is comprised of 429 individuals, have in fact been addressed. However, there have been ongoing developments since oral argument on Defendant's motion, including rulings in parallel cases and further implementation of Defendant's remedial policy in the case at bar.

First, Defendant has brought to the attention of the court three other cases where various district courts dismissed as moot complaints brought on the same grounds as those pursued here. In *Zizumbo v. Apfel,* No. 97–04971 (N.D.Ill. March 18, 1998), the court allowed Defendant's motion to dismiss, concluding that Defendant had met his heavy burden of demonstrating that the case was moot. (*See* Notice of Filing (Docket No. 29) Exh. 1.) In *Medina v. Apfel,* No. 97–1760 (S.D.Fla. August 6, 1998), the court similarly dismissed the case as moot, (*see* Notice of Filing (Docket No. 36), Exh. 1), as did the court in *Xiong v. Apfel,* 97–5390 (C.D.Cal. Oct. 19, 1998). (*See* Notice of Filing (Docket No. 38) Exh. 1.) Each case has an obvious and significant similarity to the case at bar, not the least of which is Defendant's commitment to the implementation of the BBA. However, none of the

cases fully addressed the second prong of *Davis.* It is this prong which most concerns Plaintiffs, and indeed the court.

"In applying the second prong of *Davis* a court should assume that the alleged wrong was committed and that the alleged harm occurred, and ask only whether intervening events completely dispel the harm that plaintiff alleges." *Doe v. Harris,* 696 F.2d 109, 114 (D.C.Cir.1982). Thus, a case is not moot where the challenged government action has not evaporated or disappeared and may still have an adverse effect on the parties. *See Portuguese Parents Advisory Council,* 848 F.Supp. at 1080. "A superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law." *Naturist Soc., Inc. v. Fillyaw,* 958 F.2d 1515, 1520 (11th Cir. 1992). *Compare Rosetti v. Shalala,* 12 F.3d 1216, 1233 (3rd Cir.1993) (case is not moot where SSA promulgated regulations which provided some, but not all, of the relief requested). If harm has occurred, then relief is usually in order.

This brings us to the second development since oral argument. To their credit, the parties have sought to exchange information regarding Defendant's implementation of the BBA with respect to the Plaintiff class. (*See* Pl.Mem.Resp. Notice of Filing (Docket No. 40) at 2.) The information exchange demonstrates, for example, that notification letters were sent to all potentially affected individuals. Unfortunately, Plaintiffs remain unsatisfied. In addition to raising other concerns about aspects of implementation, Plaintiffs appear to claim that dismissal hinges on the actual adjudication of each individual claim for SSI benefits.

Much to their credit, the named Plaintiffs have sought to ensure that many details relevant to class members have been addressed. This is the nature of a class action and the named Plaintiffs have fulfilled their responsibilities admirably. But having considered Plaintiff's concerns carefully, the court believes that the micro-

management which Plaintiff proposes is not properly before the court.

As Plaintiffs themselves acknowledge, courts, as a general rule, may trust government officials more than private defendants who assert that they have discontinued an alleged illegal practice. *See, e.g., Ragsdale v. Turnock,* 841 F.2d 1358, 1365 (7th Cir.1988). Certainly "[t]he tendency to trust public officials is not complete … nor is it invoked automatically…. Experience has proved that if public officials can be trusted more readily than private defendants, they cannot be trusted with the power to moot judicial proceedings simply by professing that they have mended their ways." Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3533.7 (2d Ed.1984). Thus, "[t]he crucial inquiry is 'whether there has been complete discontinuance, whether effects continue after discontinuance, and whether there is any other reason that justifies decision and relief.'" *Magnuson v. City of Hickory Hills,* 933 F.2d 562, 565 (7th Cir.1991) (quoting Wright and Miller § 3533.7). Having made that inquiry here, the court believes that there is no justification for the ongoing judicial oversight Plaintiffs seek.

Of course, the standard set by the Supreme Court in *County of Los Angeles* — that "interim relief or events completely and irrevocably eradicated the effects of the alleged violation"—requires more than the simple elimination of a policy. But that standard does not enable complainants to garner more from an eliminated policy than they would have gained had their lawsuit been successful. Here, not only has there been a complete discontinuance of the challenged policy, but Defendant has acted to implement the mandated changes.

In this regard, the court notes that, prior to the BBA, a parallel circuit wide class was certified in the Second Circuit, and injunctive relief granted with respect to the same retroactivity issue originally presented here. *See Abreu v. Callahan,* 971 F.Supp. 799 (S.D.N.Y.1997). The *Abreu* court enjoined Defendant "from failing to pay SSI benefits for the period prior to August 22, 1996 to plaintiff … and plaintiff class members who applied for benefits prior to August 22, 1996 and, but for their status as qualified aliens … would be eligible for such benefits." *Id.* at 826–27. *See also Rodriguez v. United States,* 983 F.Supp. 1445 (S.D.Fla.1997). That relief, in the court's opinion, comes nowhere near the level of specificity which Plaintiffs seek to accomplish here. *Cf. Bouchard v. Secretary of Health & Human Servs.,* 604 F.Supp. 171, 175 (D.Mass. 1984) ("A court's duty to cause equitable relief must take into account the needs of class members, but also the obstacles any relief may present to the governmental bodies who must comply with the court order.").

At bottom, the court believes that Defendant, having been prodded by Plaintiffs, has met his burden with respect to both prongs of *Davis.* As a result, the court believes, there is no longer a justifiable controversy within the Plaintiff class.

## IV. CONCLUSION

For the foregoing reasons, the court recommends that Defendant's Motions to Dismiss be ALLOWED.[2]

March 1, 1999.

---

**2.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report

and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.