**FLORIDA COUNTRY CLUBS, INC., a Florida corporation, and James R. Mikes, Plaintiffs,**

v.

**CARLTON, FIELDS, WARD, EMMANUEL, SMITH & CUTLER, P.A., a Florida professional association, and Paul P. Partyka, Defendants.**

No. 8:99–CV–1882–T–17C.

United States District Court, M.D. Florida, Tampa Division.

May 23, 2000.

C. Howard Hunter, III, Freeman, Hunter & Malloy, Tampa, FL, for plaintiffs.

William F. Jung, Black, Jung & Sisco, Tampa, FL, John Andrew DeVault, III, Robert H. Pritchard, Bedell, Dittmar, DeVault, Pillans & Coxe, P.A., Jacksonville, Jeffrey S. Weiss, Brown, Ward, Salzman & Weiss, P.A., Orlando, Paul P. Partyka, pro se, Winter Springs, FL, for defendants.

## ORDER

KOVACHEVICH, Chief Judge.

THIS CAUSE is before the Court on

(1) Defendant, Paul P. Partyka's, Motion to Dismiss Plaintiffs' Amended Complaint, (Dkt.46), filed on January 10, 2000;

(2) Defendant, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A.'s, Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim and for Qualified Immunity, (Dkt.47), filed on January 18, 2000;

(3) Plaintiff, James R. Mikes', Motion to Dismiss Defendant, Paul P. Partyka's, Counterclaim, (Dkt.53), filed on January 31, 2000;

(4) Plaintiff, James R. Mike's, Motion to Strike Answer and Affirmative Defenses of Defendant, Paul P. Partyka, (Dkt.53), filed on January 31, 2000;

(5) Defendant, Paul P. Partyka's, Motion for Leave to Amend Answer to Amended Verified Complaint, (Dkt.62), filed on April 10, 2000; and

(6) the responses thereto, (Dkts.51, 56).

## I. Background

The following factual allegations are taken from Plaintiffs' Amended Verified Complaint. (Dkt.41). Plaintiffs brought this cause of action for damages and other relief under the Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq.* Plaintiffs state that Defendants, under color of law, engaged in actions resulting in the denial, and conspiracy to deny, Plaintiffs' rights under the First, Fifth, Seventh, and Fourteenth Amendments to the United States Constitution. Plaintiffs state that this Court has jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. The amount in controversy against each Defendant named in the Amended Verified Complaint exceeds $75,000.00, exclusive of interest, costs, and attorney's fees. Plaintiffs have exhausted all administrative and state law remedies, and

have complied with all conditions precedent to the institution of this action.

Plaintiff, Florida Country Clubs, Inc. [hereinafter "Florida Country Clubs"], formerly owned and operated the Tuscawilla Country Club in the City of Winter Springs, Florida. In addition to owning Tuscawilla Country Club, Florida Country Clubs owned land surrounding the Tuscawilla Country Club. Florida Country Clubs purchased the land surrounding the Tuscawilla Country Club with the intent of developing the land for residential purposes.

Defendant, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. [hereinafter "Carlton Fields"], renders legal services and practices law through its employee and shareholder lawyers. At various times material hereto, Carlton Fields provided legal advice and counsel to the City of Winter Springs.

At all times material hereto, Plaintiff, James R. Mikes [hereinafter "Mikes"], was an officer, director, and shareholder of Florida Country Clubs. Mikes and Florida Country Clubs, as well as their public image, were closely associated with the firm of Rudnick & Wolfe, an Illinois general partnership formed for the purpose of practicing law. Mikes has been involved in various real estate dealings from 1976 through the 1990s. Various business entities Mikes did real estate business with were clients of Rudnick & Wolfe. In addition to the involvement with Rudnick & Wolfe, Mikes was a partner in several ventures with Laurence E. Kinsolving [hereinafter "Kinsolving"], the managing partner of the Rudnick & Wolfe Tampa office, from April 1981 until July 1988.

Defendant, Paul P. Partyka [hereinafter "Partyka"], is a resident of the City of Winter Springs. Partyka has long been a member of, and served as an officer, director, and/or spokesman for, the Tuscawilla Homeowner's Association, Inc. From 1988 through November 1991, Partyka served as City Commissioner and Deputy Mayor of the City of Winter Springs, Flor-

ida. On November 5, 1996, Partyka was elected Mayor, and was re-elected in November, 1999. Since 1988, the Tuscawilla Homeowner's Association has supported Partyka in exchange for his unwavering commitment to the goals of the Tuscawilla Homeowner's Association.

Plaintiffs allege that from April 1981, through June 1988, Kinsolving, who is presently an employee and shareholder in Carlton Fields, was the managing partner of Rudnick & Wolfe's Tampa office. As a result of this employment with Rudnick & Wolfe, Kinsolving was privy to, and in control of, Rudnick & Wolfe's Tampa office procedures. In 1985, Mikes and Kinsolving formed two general partnerships to develop real estate in a planned unit development zoning district. The Tampa office of Rudnick & Wolfe was counsel to both of the general partnerships formed by Mikes and Kinsolving. At some point after Mikes and Kinsolving formed the two general partnerships, Mikes' and Kinsolving's business partnership dissolved. Even though Mikes' and Kinsolving's business partnership was dissolved, Mikes and Kinsolving continued to be jointly obligated on two separate loans. As a result of the joint loan obligations, Mikes and Kinsolving were required to consult on several occasions about their personal finances and personal tax returns. As a result of these consultations between Mikes and Kinsolving, Kinsolving had direct and highly sensitive knowledge of Florida Country Clubs' and Mikes' private financial affairs and status.

In 1987, Mikes and other individuals acquired several golf courses located in residential real estate developments. Rudnick & Wolfe's Tampa office, headed by Kinsolving, represented Mikes and his co-investors in connection with their acquisition of the golf course properties, the formation of several corporations, and the merger of one corporation into Florida Country Clubs. Rudnick & Wolfe's Tampa office, headed by Kinsolving, represented Florida

Country Clubs and Mikes in the acquisition of the Tuscawilla Country Club and land intended for residential development surrounding the Tuscawilla Country Club.

Based on confirmations of fact provided to Florida Country Clubs, by Rudnick & Wolfe, Florida Country Clubs acquired the Tuscawilla Country Club and surrounding developable land for $3,000,000.00. Florida Country Clubs later spent an additional $1,500,000.00 for improvements to the Tuscawilla Country Club and surrounding land. At the time the Tuscawilla Country Club and the surrounding lands were purchased by Florida Country Clubs, the pool, courts, tennis pro shop, cart barn, and golf pro shop buildings had not been properly approved or permitted by the City of Winter Springs or the Tuscawilla Planned Unit Development plan. As known to Kinsolving and the Tampa office of Rudnick & Wolfe, Florida Country Clubs and Mikes intended to remove the pool, courts, tennis pro shop, cart barn, and golf pro shop in order to use that land for further development. As the City of Winter Springs had not established preliminary or final development plans for the land occupied by the pools, courts, tennis pro shop, cart barn, and the golf pro shop, there was no reason to believe that the 1971 Planned Unit Development plan was not still valid with respect to the Tuscawilla Country Club and the surrounding land.

When the Tuscawilla Country Club and the surrounding land was purchased in 1987, a declaration of covenants was placed upon the land. The covenants were noted on the closing documents and the subsequent title insurance policy that Rudnick & Wolfe issued as of April 27, 1988. The declaration of covenants contained in the title insurance and closing documents specifically contemplated the development of the Tuscawilla Country Club and the surrounding land with multi-family units. The covenants were scheduled to expire ten years after closing, or September 1997. In addition to the covenants, Rudnick & Wolfe required the seller of the Tuscawilla Country Club and surrounding land to sign an affidavit stating that there were no rights of any parties to the continued access to any part of the Tuscawilla Country Club or the surrounding property that would impede development.

After the purchase of the Tuscawilla Country Club and surrounding property, Florida Country Clubs and Mikes began to develop plans for a new clubhouse. As of Spring 1988, Florida Country Clubs and Mikes undertook discussions with the City of Winter Springs to obtain permits for development and construction on the Tuscawilla Country Club and surrounding land. Despite the information previously gained by Rudnick & Wolfe, Florida Country Clubs, Mikes, and other shareholders met opposition with respect to the uses that were permitted for the land surrounding the Tuscawilla Country Club. Although the City Code provisions left little discretion to the City of Winter Springs, by which it could impede development, it became immediately clear that the City of Winter Springs was opposed to development of the area surrounding the Tuscawilla Country Club. The opposition to development by the City of Winter Springs was attributed to the fact that the Tuscawilla Homeowner's Association was opposed to development of the land surrounding the Tuscawilla Country Club. As a leader of the Tuscawilla Homeowner's Association, member of the Tuscawilla Country Club, and candidate for the City Commission, Partyka opposed the development requested by Florida Country Clubs, Mikes, and other shareholders.

In 1997, Kinsolving's current employer, Carlton Fields, was engaged in litigation against Kinsolving's former client, Florida Country Clubs and Mikes. Kinsolving's knowledge of Mikes' private financial affairs and status was disclosed by Carlton Fields, gratuitously and wrongfully, to the City of Winter Park and to the public, to the detriment of Florida Country Clubs and Mikes.

Count I of Plaintiffs' Amended Complaint alleges various violations of 42 U.S.C. § 1983. Plaintiffs state that Florida Country Clubs and Mikes have clearly established property and liberty rights in: (1) the ownership, use, and development of the Tuscawilla Country Club and the surrounding property; (2) the ownership and use of the right to legal counsel of their choice; (3) the right to the duty of loyalty and confidentiality by their former lawyer; and (4) in their business goodwill and business reputation. Plaintiffs state that they are entitled to equal protection under the law, substantive due process, freedom of expression and association, and the right to a jury trial.

Plaintiffs state that Carlton Fields and Partyka violated Plaintiffs' fundamental rights, while acting under color of state law, by reaching an agreement to deprive Florida Country Clubs and Mikes of Constitutional rights, and in furtherance of this agreement, violated those rights. According to Plaintiffs, Carlton Fields and Partyka retaliated against Florida Country Clubs' and Mikes' legitimate exercise of fundamental First Amendment rights of freedom of speech and freedom of association. Plaintiffs further state that Carlton Fields and Partyka treated Florida Country Clubs and Mikes differently than other similarly situated persons and entities.

The City of Winter Springs, Carlton Fields, and Partyka, while acting under color of state law, according to Plaintiffs, deprived Florida Country Clubs and Mikes of clearly established fundamental rights without substantive and procedural due process, in accordance with the City of Winter Springs' specially developed custom or policy. Plaintiffs state that the City of Winter Springs' policy of depriving fundamental rights pertained only to Florida Country Clubs and Mikes.

According to Plaintiffs, the actions taken by Carlton Fields and Partyka were arbitrary and capricious and bore no reasonable relation to any legitimate objective, implied or otherwise, sought to be attained by the City of Winter Springs. At all times material to this action, Florida Country Clubs and Mikes were similarly situated to other entities that have pursued development of property in accordance with the Tuscawilla Planned Use Development, that have operated businesses within the City of Winter Springs, and that have attempted to develop property in accordance with a settlement agreement with the City of Winter Springs.

Plaintiffs state that the actions performed by Carlton Fields and Partyka were non-legislative actions that caused Plaintiffs substantial injury and damage, including: loss of business; loss of reputation; loss of goodwill; loss of business opportunity; and incurrence of attorney's fees. Florida Country Clubs and Mikes allege that they are entitled to punitive damages because the motive and intent behind the actions performed by Carlton Fields and Mikes were wanton and reckless, or callously indifferent to Florida Country Clubs' and Mikes' constitutional and federally protected rights.

Count II of Plaintiffs' Amended Complaint alleges that Defendants committed civil theft Plaintiffs state that Carlton Fields and Partyka acted with the intent of depriving Florida Country Clubs and Mikes of the Tuscawilla properties, as well as their rights to use the properties. The conduct of Carlton Fields and Mikes, according to Plaintiffs, was expressly performed for their own benefit, or to benefit other alleged conspirators. Carlton Fields and Mikes acted specifically in an endeavor designed to obtain and/or use, temporarily or permanently, Florida Country Clubs' and Mikes' Tuscawilla property, in violation of Section 812.014, Florida Statutes. In connection with their allegations of civil theft, Plaintiffs assert that they are entitled to recover threefold the compensatory and special damages sustained, minimum damages in the amount of two-hundred dollars ($200.00), reasonable attorney's fees, and costs of this action.

Count III of Plaintiffs' Amended Complaint alleges breach of contract. Plaintiffs state that Florida Country Clubs and the City of Winter Springs signed a Carlton Fields claim assignment recognizing Florida Country Club's entitlement to the City of Winter Spring's rights. Florida Country Clubs has performed all obligations imposed by the agreements entered into with the City of Winter Springs. Florida Country Clubs demands that Carlton Fields pay Florida Country Clubs the sums assigned by the Carlton Fields claim assignment. Plaintiffs state that Carlton Fields has failed and refused to perform its obligations under Florida law to the City of Winter Springs. As a direct and proximate result of the breach of contract, Florida Country Clubs has been harmed. In light of the alleged harm caused by Carlton Fields' breach of contract, Plaintiffs request compensatory damages, reasonable attorney's fees, and costs of this action.

Count IV of Plaintiffs' Amended Complaint alleges breach of fiduciary duty. Plaintiffs state that Carlton Fields owed a fiduciary duty to Florida Country Clubs and Mikes, as a former client of their present employee, Kinsolving, to not be adverse to their interests or divulge confidential communications. Further, Carlton Fields owed a fiduciary duty to Plaintiffs, as attorney for the City of Winter Springs, to exercise reasonable skill and ordinary diligence toward the City of Winter Springs, Florida Country Clubs, and Mikes. Carlton Fields' fiduciary duty allegedly extended to require the disclosure of all material facts to all parties, and or allow the disclosure of all material facts to be disclosed in litigation, by virtue of its role in litigation occurring in Hillsborough County. Plaintiffs state that Carlton Fields acted with an evil motive or intent, with wanton and reckless, or callous indifference to Florida Country Clubs' and Mikes' federal and state rights. As a result of the allegations contained in Count IV, Plaintiffs request punitive damages, compensatory damages, special damages, attorney's fees, and costs of this litigation.

Count V of Plaintiffs' Amended Complaint alleges breach of an agreement, invasion of privacy, and defamation. Plaintiffs allege that Partyka's comments concerning Mikes, during the 1999 election, disparaged Mikes and violated the executory agreements reached in a federal case settlement. Partyka's comments concerning Mikes were unjustified, invaded the privacy of Mikes, and defamed Mikes. As a direct and proximate result of the alleged defamatory remarks made by Partyka, Mikes has suffered substantial special damages, including: loss of business; loss of goodwill; loss of business opportunity; and incurrence of attorney's fees. In addition to compensatory, and special damages, Plaintiffs request an award of punitive damages for the alleged wanton, reckless, and/or callous remarks made by Partyka.

On April 11, 2000, a mediation was conducted in this case. As a result of the mediation, an impasse was reached between Plaintiffs and Carlton Fields. However, a settlement was reached between Plaintiffs and Partyka. The settlement between Plaintiffs and Partyka is currently in the process of finalization.

II. *Standard of Review*

A district court should not dismiss a complaint unless it appears, "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To survive a motion to dismiss, a plaintiff may not merely "label" his or her claims. *See Blumel v. Mylander,* 919 F.Supp. 423, 425 (M.D.Fla.1996). At a minimum, the Federal Rules of Civil Procedure require a "short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Conley,* 355 U.S. at 47, 78 S.Ct. 99 (quoting Fed.R.Civ.P. 8(a)(2)).

In deciding a motion to dismiss, the court may only examine the four corners of the plaintiff's complaint. *See Rickman v. Precisionaire, Inc.,* 902 F.Supp. 232, 233 (M.D.Fla.1995) "The threshold sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Ancata v. Prison Health Serv., Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (citation omitted). In addition, a court must accept the plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff. *See Howry v. Nisus, Inc.,* 910 F.Supp. 576 (M.D.Fla. 1995). However, when on the basis of a dispositive issue of law, no construction of the factual allegations of the complaint will support the cause of action, dismissal of the complaint is appropriate. *See Executive 100, Inc. v. Martin County,* 922 F.2d 1536 (11th Cir.1991).

## III. *Discussion*

### A. *Defendant Partyka*

As this Court has received notice that a settlement was reached between Plaintiffs and Partyka, the Court finds that all motions relating only to Defendant Partyka should be denied as moot. As a result of settlement, the following motions will be denied as moot: Partyka's Motion to Dismiss Plaintiffs' Amended Complaint, (Dkt.46), filed on January 10, 2000; Florida Country Clubs' and Mikes' Motion to Dismiss the Counterclaim of Paul P. Partyka and to Strike Answer and Affirmative Defense of Paul P. Partyka, (Dkt.53), filed on January 31, 2000; and Partyka's Motion to Amend Answer to Amended Verified Complaint, (Dkt.62), filed on April 10, 2000.

### B. *Defendant Carlton Fields*

Defendant Carlton Fields states that dismissal of Plaintiffs' Amended Complaint is warranted because Plaintiffs have failed to state a cause of action upon which relief can be granted and because Carlton Fields is entitled to qualified immunity. Carlton Fields states that Plaintiffs' section 1983 claim must be dismissed because: (1) respondeat superior cannot be a basis for liability; (2) the state action element is deficient; (3) constitutional rights are insufficiently pled; and (4) qualified immunity.

Count I of Plaintiffs' Amended Complaint alleges various violations of 42 U.S.C. § 1983. In support of dismissal of Count I, Carlton Fields states that despite Plaintiffs' attempt to characterize Carlton Fields' litigation activities as constitutional violations, Plaintiffs have failed to demonstrate any activity performed by Carlton Fields that would constitute a violation of Plaintiffs' constitutional rights. Carlton Fields states that the actions allegedly taken in violation of Plaintiffs' constitutional rights, were performed by Carlton Fields in its role as counsel for the City of Winter Springs.

Florida Country Clubs asserts that Carlton Fields' attorneys met with City Commissioners and the Mayor of Winter Springs to discuss the litigation, and as a result of this meeting, acted in accordance with the intention of its clients. In addition to claiming that Carlton Fields acted in accordance with the wishes of its clients, Plaintiffs allege that Carlton Fields' litigation conduct, including the delay of court proceedings, the filing of spurious motions, the assertion of venue privilege, the appearance at depositions, and other similar matters, gives rise to the alleged constitutional violations committed by Carlton Fields. Carlton Fields claims that all of the actions allegedly committed by Carlton Fields, and complained of by Plaintiffs, are characterized as discretionary actions for purposes of a qualified immunity analysis, as the actions performed pertain to City activities such as development, permitting, zoning, billing, meeting, planning, and litigation conduct.

In *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the United States Su-

preme Court held that a federal court may not apply "heightened pleading standards" in a section 1983 action. As a result of the U.S. Supreme Court's finding in *Leatherman*, section 1983 actions are held to the same pleading standards as any other action. *See Leatherman*, 507 U.S. at 168, 113 S.Ct. 1160. Federal Rule of Civil Procedure 8(a)(2) states that "a claim for relief shall contain a short and plain statement of the claim showing that the pleader is entitled to relief."

The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a "short and plain statement of the claim" that will give [the defendant] fair notice of what the [p]laintiff's claim is and the grounds upon which it rests.

*Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the depravation of any rights, privileges, or immunities, secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purpose of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

■ In an action against a governmental entity, liability for a violation of 42 U.S.C. § 1983, may not be premised only on a theory of respondeat superior. *See Gilmere v. City of Atlanta*, 774 F.2d 1495, 1503 (11th Cir.1985). However, governmental entities may be liable under 42 U.S.C. § 1983, if the governmental entity deprives individuals of civil rights pursuant to a governmental policy or custom. *See*

*Mandel v. Doe*, 888 F.2d 783, 791 (11th Cir.1989). A local government may be held liable under 42 U.S.C. § 1983, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury...." *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ In order to show liability under 42 U.S.C. § 1983, a single action taken by an individual with the authority to make policy may be sufficient to show official policies or customs, under certain circumstances. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In order to establish a policy or custom sufficient to impose municipal liability, it is generally necessary to show a persistent and widespread practice. *See Burnette v. Ciolino*, 750 F.Supp. 1562, 1564 (M.D.Fla.1990). In addition, a plaintiff must show that the municipality had actual or constructive knowledge of the acts complained of. *See id.* Random acts or isolated incidents are normally not sufficient to show a policy or custom. *See Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

Section 1983 permits a plaintiff to seek an award of damages from government officials who, acting under color of state law, have violated clearly established constitutional or statutory rights. *See Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 1696, 143 L.Ed.2d 818 (1999). Even though government officials may be held liable for violations of a person's clearly established constitutional and statutory rights under section 1983, government officials performing discretionary functions are generally provided qualified immunity from such a suit. *See id.* Government officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

When a court is determining whether a government official is entitled to qualified immunity, the court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert,* 526 U.S. 286, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). "This order of procedure is designed to 'spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'" *Wilson,* 526 U.S. at 609, 119 S.Ct. 1692 (citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). "Deciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the [government officials] and the general public." *Id.* (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 840–42, n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). As it is necessary to address the substance of Plaintiffs' section 1983 claims before addressing an issue of qualified immunity, this Court will now turn to Plaintiffs' allegations concerning the alleged violation of section 1983.

Plaintiffs allege that Carlton Fields engaged in a conspiracy to deprive Plaintiffs of clearly established property and liberty rights in: (1) the ownership, use, and development of the Tuscawilla Country Clubs, and the surrounding land; (2) the ownership and use of the right to legal counsel of their choice; (3) the right to loyalty and confidentiality by their former lawyer; and (4) the right to business goodwill and business reputation. Plaintiffs state that they have clearly established and fundamental rights of equal protection under the law, rights of substantive due process, and freedom of expression and association.

In order to allege a successful section 1983 action, a plaintiff's complaint must show that the conduct complained of "(1) was committed by a person acting under color of state law, and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Rey v. KMART Corp.,* 1998 WL 656070, * 2 (S.D.Fla.1998)(citing *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir.1992)). In order to determine whether a private person or entity took actions as a state actor, the Eleventh Circuit has set out three tests to be considered: (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test. *See Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir.1992) (citing *National Broadcasting Co., Inc. v. Communications Workers of America, AFL–CIO,* 860 F.2d 1022, 1026 (11th Cir.1988)).

Plaintiffs, in the case at hand, rely on the nexus/joint action test to establish the allegation that Carlton Fields was a state actor at the time it took the actions complained of. Under the nexus/joint action test, it is rare for a private party to be viewed as a state actor. *See id.* A private party is deemed to be a state actor for consideration of section 1983 violations, when the state has " so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *National Broadcasting Co., Inc.,* 860 F.2d at 1026 (citing *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 357–58, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)); *see also Rey,* 1998 WL 656070, *2.

■ After completely reviewing Plaintiffs' Amended Complaint, the Court finds that Plaintiffs have failed to allege sufficient facts to establish state action on the part of Carlton Fields. Plaintiffs allege that Carlton Fields became a member of a conspiracy with the City of Winter Springs for the purpose of depriving Plaintiffs of their clearly established constitutional and statutory rights. However, Plaintiffs have

failed to show the Court any action, other than, actions taken by Carlton Fields as attorneys for the City of Winter Springs, that violated Plaintiffs clearly established constitutional or statutory rights. Plaintiffs claim throughout their Amended Complaint that Carlton Fields took actions, in alleged violation of 42 U.S.C. § 1983, by acting as an attorney for the City of Winter Springs.

Plaintiffs allege that Carlton Fields acted as a conspirator by performing such actions as: (1) failing to recognize the existence of a conflict of interest in the representation of the City of Winter Springs; (2) failing to thoroughly investigate previous lawsuits initiated in Hillsborough and Seminole Counties; (3) failing to refrain from becoming involved in the alleged conspiracy against Plaintiffs by refusing to represent the City of Winter Springs; (4) concealing the alleged conspiracy from Plaintiffs; (5) assisting the alleged conspirators in the acquisition of the Tuscawilla Country Club and the surrounding land; (6) discussing venue issues with the City of Winter Springs, in connection with another lawsuit; (7) discussing possible recusal of a state court judge, in connection with a state court case; (8) setting a "closed session" of the Commission in order to discuss litigation plans with Partyka and Commissioners sitting as the governing board of the City of Winter Springs; (9) preparing and filing motions in a Hillsborough County case; (10) preparing and filing a motion for interpretation of a settlement agreement in a state court case; (11) allegedly violating various Florida Bar Rules of Professional Conduct; (12) writing numerous letters to Florida Country Clubs' and Mikes' attorneys; (13) participating in discovery in the Hillsborough and Seminole County litigations; (14) attending depositions of alleged co-conspirators and objecting during those depositions; (15) violating the Florida Rules of Civil Procedure; (16) incorrectly and erroneously advising the alleged conspirators on the law regarding disqualifications; (17) after being disqualified from the Hillsborough County litigation, improperly communicating with the City of Winter Springs' new attorneys; (18) appealing the order of disqualification and failing to withdraw as counsel during the pendency of the appeal; and (19) moving for a protective order.

The Court has considered Plaintiffs' Amended Complaint in a light most favorable to Plaintiff and finds that the allegations against Carlton Fields, examples of which were previously stated by the Court, allege nothing more than the fact that Carlton Fields acted as an attorney for the City of Winter Springs, at some point during the alleged conspiracy committed against Plaintiffs. As this Court and the Eleventh Circuit have previously stated, it is extremely difficult for a plaintiff to satisfy the threshold sufficiency that is necessary for a court to find that a private individual has acted as a state actor for purposes of considering an alleged section 1983 violation. In the case at hand, Plaintiffs have merely labeled their Amended Complaint in an attempt to allege violations of 42 U.S.C. § 1983, by Carlton Fields. Nothing in the Plaintiffs' Amended Complaint, however, satisfies the requirements for pleading a section 1983 violation by a private actor. Therefore, this Court dismisses Count I of Plaintiffs' Amended Complaint.

As this Court finds that Plaintiffs' Section 1983 claims are not sufficient to withstand Carlton Fields' Motion to Dismiss, this Court will not address the issue of qualified immunity.

Due to the dismissal of Count I of Plaintiffs' Amended Complaint, this Court does not have subject matter jurisdiction over Counts II, III, IV, and V of Plaintiffs' Amended Complaint, all of which assert violations of Florida law. 28 U.S.C. § 1367(c)(3). Accordingly, it is

**ORDERED** that Defendant, Paul P. Partyka's Motion to Dismiss Plaintiffs' Amended Complaint, (Dkt.46), be **DENIED** as moot; Florida Country Clubs' and James R. Mikes' Motion to Dismiss

the Counterclaim of Paul P. Partyka and to Strike Answer and Affirmative Defense of Paul P. Partyka, (Dkt.53), be **DENIED** as moot; Paul P. Partyka's Motion to Amend Answer to Amended Verified Complaint, (Dkt.62), be **DENIED** as moot; Defendant, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A.'s, Motion to Dismiss, be **GRANTED**, as to Count I of Plaintiffs' Amended Complaint; and Counts II, III, IV, and V of Plaintiffs' Amended Complaint are dismissed pursuant to 28 U.S.C. § 1367(c)(3).